IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RACHAEL L. NESTICO, : | |
| : | |
| Plaintiff, : | |
| : | Case No. 4: 04-CV-2206 |
| v. : | |
| : | |
| WACHOVIA BANK, : | |
| : | (Judge McClure) |
| Defendant/Third Party : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| VICTOR NESTICO, : | |
| : | |
| Third Party Defendant. : | |

**M E M O R A N D U M**

July 10, 2006

**BACKGROUND:**

On October 6, 2004, plaintiff filed a two-count complaint in the United States District Court for the Middle District of Pennsylvania. Substantively, the complaint asserts a single cause of action in fraud. Count two of the complaint is a request for punitive damages. The complaint is brought under our diversity jurisdiction pursuant to 28 U.S.C. § 1332; defendant Wachovia Bank is a national bank with its main offices in Charlotte, North Carolina and plaintiff is a citizen of Pennsylvania.

1

The factual allegations that form the basis of this complaint arise out of a transaction entered into by plaintiff's ex-husband with Wachovia in January 2002 in which plaintiff's forged signature was used to obtain two mortgages. When one of these loans went into default plaintiff's credit rating was adversely affected.

Now before the court is defendant's motion for summary judgment filed on February 16, 2006. After several extensions of time to facilitate briefing the motion is now ripe for our decision. For the following reasons we will grant defendant's motion for summary judgment because plaintiff's claim is time-barred.

**DISCUSSION:**

### I. LEGAL STANDARD

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d

701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that creates a genuine issue as to a material fact. See Celotex, 477 U.S. at 32; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II. FACTUAL BACKGROUND

### A. Local Rule 56.1

First, we note that defendant complied with Local Rule 56.1 and submitted a statement of undisputed material facts in the form of short and concise numbered paragraphs supported by citations to the record. (Rec. Doc. No. 17.) Plaintiff has also filed a counter-statement of undisputed material facts in similar form. (Rec. Doc. No. 41.) Unfortunately, plaintiff's counter-statement of material

facts fails to comply with the procedure set forth in Local Rule 56.1. Local Rule 56.1 provides in relevant part that:

> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph [relating to the moving party's statement of material facts], as to which it is contended that there exists a genuine issue to be tried. <u>Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.</u>

Local Rule 56.1 (emphasis added).

Plaintiff's counter-statement of material facts repeatedly fails to include references to the parts of the record that support her statements. We will develop the uncontested factual background from both parties' statements of material facts, despite plaintiff's failure to comply with the procedure established by the Local Rules. However, we remind plaintiff that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Rule 56.1.

### B. Material Facts

Nestico's claim arises from a bank loan transaction that occurred on

January 29, 2002.  On that date, plaintiff's ex-husband ,Victor Nestico, borrowed funds from defendant Wachovia during a closing at Wachovia's Fairlane Mall Branch in Pottsville, Pennsylvania.  Plaintiff asserts that at that time Wachovia disbursed funds to Victor Nestico in exchange for mortgages and notes upon which plaintiff's forged signature had been placed.  Plaintiff was not present at the January 29, 2002 closing and she did not learn of the closing, or the notes and mortgages on which her signatures were forged until April 2002.

In April 2002, plaintiff discovered the existence of mortgages for 233 Maple Street, Mount Carmel, Pennsylvania (mortgage # 1875) and 926 Chestnut Street, Kulpmont, Pennsylvania (mortgage #9586) when she located documents relating to the mortgages in her dining room.  The documents revealed the mortgage names, the names of the obligees, and the amount financed through Wachovia.  Upon discovering the existence of the loan documents plaintiff contacted her stepfather and mother, William and Sandra Procopio.  They met with representatives of Wachovia, who eventually commenced an investigation to be coordinated by Wachovia's fraud investigator, Pat Hart.

Hart requested that plaintiff sign an affidavit of forgery.  That affidavit included language that stated that she had not "received any benefit, directly or indirectly, from the proceeds of the loan."  (Rec. Doc. No. 25, Ex. A.)  Plaintiff

5

was aware that Wachovia needed documentation about the forgery, but would not sign the affidavit presented because it was not true. Plaintiff knew that part of the proceeds of the loan were used to pay off plaintiff's previous higher-interest mortgage with Union National Bank on which plaintiff was a borrower and she told Hart the same.[1] Plaintiff refused to sign the affidavit as presented because it was not true and she felt that the Bank was responsible for the problem.

Because plaintiff would not execute an affidavit of forgery, Wachovia agreed to allow plaintiff and Victor Nestico to refinance the loans (mortgage numbers 1875 and 9586) obtained in the January 29, 2002 transaction. On May 28, 2002, Wachovia refinanced the loans, placing one loan in the joint names of plaintiff and Victor Nestico, and the other relating to the Mount Carmel property in Victor Nestico's name only. After the May 28, 2002 loan transaction, Wachovia removed plaintiff's name entirely from the loan documents for loan #1875 and the parties agree she is not liable to repay that loan.

On May 31, 2002, plaintiff rescinded the May 28, 2002 loan transaction relating to loan # 9586, causing the mortgage on 926 Chestnut Street to revert to the Wachovia mortgage and note that were in place as a result of the

---

[1] The parties dispute whether plaintiff also told Hart that she used portions of the loans to pay for furniture.

January 29, 2002 closing.² Of course, that was the note that contains plaintiff's forged signature.

Plaintiff received credit reports dated May 17, 2002 and June 27, 2002 which revealed the existence of the loan # 9586 on her credit report. According to plaintiff in June 2002 she spoke with Pat Hart who told her that there would be no choice but to issue the loan in only Victor Nestico's name but that it would take some time. (Rec. Doc. No. 40, at 3, ¶ 14.) In July 2002 William Propocio contacted Hart about the mortgage obligation remaining on plaintiff's credit and he was informed that the obligation is "staying on her credit report." (Rec. Doc. No. 25, Ex. 4, at 8.)³ Propocio also disputed the validity of the Transunion credit report with Transunion by initiating an online investigation; however, the loan

---

²On that same day William Propocio, plaintiff's stepfather, contacted defendant Nestico to have him sign an agreement drafted by Propocio which would give plaintiff the option of purchasing Victor Nestico's interest in the property. (Rec. Doc. No. 40, Ex. D.) Victor Nestico refused to sign the document. We do not find this document significant in our analysis.

³Plaintiff has offered an affidavit that states that she was unaware that the loan was still on her credit report after June 2002. According to plaintiff in June 2002 she spoke with Pat Hart who told her that there would be no choice but to redo the loan in only Victor Nestico's name but that it would take some time. (Rec. Doc. No. 40, at 3, ¶ 14.) Plaintiff's answers to interrogatories also assert that Hart misled plaintiff into believing the loan would be taken off her report during June 2002. (Rec. Doc. No. 25, Ex. 4, at 8.) The affidavit also states that plaintiff was without knowledge of the above cited discussion between Hart and Propocio in July 2002. (Rec. Doc. No. 40, at 3, ¶ 15.)

remained on plaintiff's account following the investigation.

In August 2004, after Victor Nestico had stopped making payments toward the 926 Chestnut Street mortgage and loan, plaintiff received notice from Wachovia that she had defaulted on the loan obligation. Plaintiff and her parents then contacted Wachovia inquiring as to how she could resolve her delinquency on the forged loan. In August 2004 Wachovia again advised plaintiff of the option of signing an affidavit of forgery and forwarded one to her for her signature. This affidavit again stated that she had not "received any benefit, directly or indirectly, from the proceeds of the loan." (Rec. Doc. No. 25, Ex. A.) Plaintiff returned to Wachovia a September 1, 2004 notarized affidavit that was substantially the same as the affidavit provided by the bank but that did not include the above quoted language. (Rec. Doc. No. 25, Ex. B.)

Upon receipt of plaintiff's notarized affidavit Wachovia discontinued its efforts to collect the delinquency from plaintiff and discontinued foreclosure activities. Wachovia also notified the credit reporting agencies to delete and suppress the loan from plaintiff's credit report because of "fraud." (Rec. Doc. No. 25, Ex. C.) On October 4, 2004 an officer in Wachovia's consumer advocacy group wrote to plaintiff stating that "I have contacted the three major credit reporting agencies and requested that [the forged account] be deleted from your

credit profile because it was obtained fraudulently." (Rec. Doc. No. 40, Ex. C.) On October 6, 2004 the instant complaint was filed.

### III.  PLAINTIFF'S COMMON-LAW FRAUD CLAIM IS TIME-BARRED

We agree with defendant that plaintiff's fraud claim is time-barred. As this is a diversity action we look to Pennsylvania law to determine whether plaintiff failed to comply with the statute of limitations. Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 1996). The statute of limitations for fraud in Pennsylvania is two years. 42 Pa. C.S.A. § 5524(7). The forged loan was entered into on January 29, 2002. Plaintiff did not learn about documents relating to the loan until April and it was not until July 2002 that Propocio, who had been regularly involved with the fraud investigation, had a conversation with Hart in which he was informed that the loan was going to stay on plaintiff's credit report. Plaintiff however claims in her affidavit that she was not aware of the conversation with Propocio in July 2002. Plaintiff asserts that she was told that the loan would be taken off of her credit report by Hart in June of 2002 and that she assumed it would be taken care of by the bank.

"Under Pennsylvania law the statute of limitations begins to run at the time 'the right to institute and maintain the suit arises.'" Beauty Time, Inc. v. VU

9

Skin Sys., Inc., 118 F.3d 140, 143-44 (3d Cir. 1997) (quoting Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)).  In this case the alleged fraudulent transaction occurred on January 29, 2002, meaning that without the benefit of tolling plaintiff's claim would surely be barred by the two-year statute of limitations.  Plaintiff has advanced three theories in support of tolling the statute of limitations in her brief in opposition to defendant's motion.  Plaintiff asserts that the discovery rule, the doctrine of inherent fraud, and the doctrine of fraudulent concealment each tolls the statute of limitations in this case.  We now will examine each in turn.

A.  Discovery Rule

"[T]he discovery rule applies in Pennsylvania when the underlying cause of action sounds in fraud, and ... the statute of limitations is tolled until the plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim."  Beauty Time, 118 F.3d at 148.  The United States Court of Appeals for the Third Circuit recently examined and addressed Pennsylvania's discovery rule in Mest v. Cabot Corp., 449 F.3d 502, 510-12 (3d Cir. 2006).  In relevant part the court of appeals stated:

> The discovery rule is designed to "ameliorate the sometimes-harsh effects of the statute of limitations," and it is often applied in medical malpractice

>and latent disease cases in which the plaintiff is unable to
>discover his or her injury until several years after the tort
>occurred.  The discovery rule tolls the accrual of the
>statute of limitations when a plaintiff is unable, "despite
>the exercise of due diligence, to know of the injury or its
>cause."  Under the rule, even if a plaintiff suffers an
>injury, the statute of limitations does not begin to run until
>"the plaintiff knows, or reasonably should know, (1) that
>he has been injured, and (2) that his injury has been
>caused by another party's conduct."  For the statute of
>limitations to run, a plaintiff need not know the "exact
>nature" of his injury, as long as it objectively appears that
>the plaintiff "is reasonably charged with the knowledge
>that he has an injury caused by another."
>
>Id. at 510-11 (citations omitted).

The discovery rule does not focus on whether the injury and its source was actually known by the plaintiff, but rather whether if through the exercise of due diligence the injury and its source could be known.  Id. at 512.  Plaintiff asserts in her brief in opposition that "plaintiff could not have been aware of the fraudulent transaction until the middle of April of 2002" when she found copies of hidden documents related to the January 29, 2002 transaction.  (Rec. Doc. No. 38-1, at 19.)  We agree that under the discovery rule that could be the earliest possible date that plaintiff was aware of her injury and its source.

During April and May of 2002 it is undisputed that plaintiff participated with defendant's fraud specialist Pat Hart in an investigation into the

11

fraud. Plaintiff's brief in opposition notes that "[o]n June 27, 2002 Plaintiff checked her credit report and saw that the forged loan was on her credit report, but she believed Pat Hart was going to take care of that and her credit was not being affected since Defendant Nestico was paying on the forged mortgage." (Rec. Doc. No. 38-1, at 20-21.) There is no dispute that plaintiff knew that the forged mortgage was on her credit report by the end of June 2002. Nevertheless, plaintiff asserts that the discovery rule should be tolled until August 2004 when she was given notice of the delinquency on the loan. Her first argument is that Hart allegedly told her in June 2002 that she would not be held responsible for the loan and that eventually the loan would be redrawn so that it was only in Victor Nestico's name. This argument carries no weight in our analysis under the discovery rule because plaintiff was aware that the fraudulent loan was on her credit report in June 2002 and was aware that it arose out of the use of her forged signature on documents in January 2002 which were accepted by defendant Wachovia's employee from defendant Nestico.

Her second argument speaks more directly to the discovery rule and is that she was not aware of her injuries and their causes in July 2002. That argument relies on the fact that Victor Nestico continued to make payments on the forged mortgage, thereby minimizing any negative impact on plaintiff's credit and

preventing the forged mortgage from going into delinquency status. Plaintiff succinctly states in her brief in opposition that "[e]ven though Plaintiff was aware that the loan remained on her credit, her credit score was not seriously affected since Defendant Nestico was paying on the mortgage up until August of 2004." (Rec. Doc. No. 38-1, at 15) (emphasis added).

       This argument is not persuasive because the discovery rule does not require "a plaintiff . . . know the 'exact nature' of [her] injury, as long as it objectively appears that the plaintiff 'is reasonably charged with the knowledge that [she] has an injury caused by another.'" Mest, 449 F.3d at 510-11 (quoting Ackler v. Raymark Indus., Inc., 551 A.2d 291, 293 (1988)). Under the discovery rule it is reasonable for us to charge the plaintiff with knowledge of her injury and its cause by another when she received her second credit report that continued to contain the mortgaged loan as a liability. The fact that a forged loan was on her credit report was enough to substantiate that she had an injury. Plaintiff's argument to the contrary is unpersuasive. Thus, under the discovery rule we find at the latest plaintiff's claim accrued on the date she received her second credit report: June 27, 2002.

                              B.  Inherent Fraud

Under Pennsylvania law the doctrine of inherent fraud is also available to toll the accrual of a claim. The United States Court of Appeals for the Third Circuit has noted that the inherent fraud doctrine "focuses on whether the underlying events are based on fraud or deceit. If they are, then that without more will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs." <u>Beauty Time, Inc.</u>, 118 F.3d at 146 (quoting <u>Sheet Metal Workers Local 19 v. 2300 Group, Inc.</u>, 949 F.2d 1274, 1280 (3d Cir. 1991)) (quotation marks and citations omitted). In the instant case plaintiff has alleged that the initial transaction between defendant Nestico and defendant Wachovia was based on fraud and deceit. The transaction allegedly involved the use of her forged signature. That original fraud, however, was revealed to plaintiff after she discovered the documents in April 2002 and participated with defendants in the fraud investigation. As the above quote notes, the doctrine of inherent fraud "will toll the statute of limitations until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs." <u>Beauty Time, Inc.</u>, 118 F.3d at 146. In this case that fraud was revealed during defendant Wachovia's investigation in April to June 2002.

Plaintiff asserts that "Wachovia repeatedly misrepresented to plaintiff that the forged mortgage would be removed from her record and at the same time

they attempted every avenue possible to make her liable to pay this loan." (Rec. Doc. No. 38-1, at 22.) Plaintiff argues that the misrepresentations in the handling of the fraud investigation should toll the statute of limitations. This is simply not true. By June 2002 plaintiff knew of the fraudulent allegations upon which she is now attempting to sue.

## C. Fraudulent Concealment

The accrual of a cause of action under Pennsylvania can also be tolled by the doctrine of fraudulent concealment. "Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" Mest, 449 F.3d at 516 (quoting Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (3d Cir. 1985)). Unlike inherent fraud, the doctrine of fraudulent concealment does not require the underlying events that form the plaintiff's injury to be inherently fraudulent. Beauty Time, Inc., 118 F.3d at 146. Fraudulent concealment could be described as a narrower form of the discovery rule in which the defendant has prevented the plaintiff from discovering the underlying facts of his cause of action. Id. at 148. The court of appeals recently noted that "[l]ike the discovery rule, the fraudulent concealment doctrine does not toll the statute of

limitations where the plaintiff knew or should have known of [her] claim despite the defendant's misrepresentations or omissions." Mest, 449 F.3d at 516. It is clear that Wachovia did not conceal the fact that a forged mortgage appeared on plaintiff's credit report. As we have already discussed under our analysis of the discovery rule, plaintiff's claim accrued at the latest on the date she received her second credit report: June 27, 2002. We do not find plaintiff's assertion that Hart assured her that the forged mortgage would be removed from her credit report sufficient to toll the statute of limitations when plaintiff was aware of the forged mortgage's presence on her credit report.

**CONCLUSION:**

Quite simply this is a case where plaintiff slept on her rights. Plaintiff did indeed relax her vigilance but it was after she discovered her injury (i.e., the forged mortgage on her credit report) and its cause (i.e., the fraudulent transaction of January 29, 2002). Therefore, we will grant defendant's motion for summary judgment as plaintiff's fraud claim is time-barred.

s/ James F. McClure, Jr.  
James F. McClure, Jr.  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHAEL L. NESTICO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 4: 04-CV-2206 |
| v. | : | |
| | : | |
| WACHOVIA BANK, | : | |
| | : | (Judge McClure) |
| Defendant/ Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| VICTOR NESTICO, | : | |
| | : | |
| Third Party Defendant. | : | |

**O R D E R**

July 10, 2006

For the reasons set forth in the accompanying memorandum,

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1

1. Defendant's motion for summary judgment is granted as plaintiff's fraud claim is time-barred. (Rec. Doc. No. 25.)

2. Final judgment is entered in favor of the Defendant Wachovia Bank and against plaintiff Rachael L. Nestico.

3. The third-party complaint against Victor Nestico is dismissed as moot.

4. The clerk is directed to close the case file.

      s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge